UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL E. SHEIMAN,<br>    *Plaintiff*,<br>v.<br>UNITED STATES DEPARTMENT<br>OF THE TREASURY,<br>    *Defendant*. | No. 3:22-cv-1138 (MPS) |

### RULING ON MOTION TO DISMISS

Michael Sheiman, a former employee of the U.S. Internal Revenue Service (IRS), claims that the Department of the Treasury is wrongfully collecting a debt from him, and he invokes this Court's jurisdiction under 28 U.S.C. § 1346(a)(1). The Defendant has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] For the reasons explained below, I GRANT the motion under Rule 12(b)(1), finding that I lack subject matter jurisdiction. I therefore dismiss the case without prejudice and do not address the Rule 12(b)(6) motion.

I.  FACTUAL AND PROCEDURAL BACKGROUND

For purpose of this ruling, I accept as true the following facts, which are taken from the complaint and its attachments. *See* Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Further, in cases where the complaint attaches only a portion of a document, I also rely on the complete version of the

---

[1] The motion filed by the defendant is entitled "Motion to Dismiss or, Alternatively, For Summary Judgement." ECF No. 11. But the defendant has not set forth any summary judgment legal standards in its brief and has not filed the Local Rule 56(a)(1) statement required to support a motion for summary judgement. *See* D.Conn. L. Civ. R. 56. The defendant also, properly, filed the Notice to Self-Represented Litigants related to a motion to dismiss but not the similar notice related to a motion for summary judgement. *See* ECF No. 12; L. Civ. R. 12, 56. So I could not grant any motion for summary judgment on this record. In any event, I find that it is not necessary to convert the motion to dismiss to a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), because in deciding a motion to dismiss under Rule 12(b)(1), I "may consider affidavits and other materials beyond the pleadings." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004). Here, as discussed in the text, I rely on the complaint, documents attached to the complaint, and the complete versions of such documents attached to the defendant's brief.

document attached to the defendant's brief, including portions not quoted or summarized in Plaintiff's complaint. *See Malin v. XL Capital Ltd*., 499 F.Supp.2d 117, 131 (D. Conn. 2007)("Courts have routinely held that when a complaint quotes documents only in part and omits critical portions of the documents, it is permissible for a court ruling on a motion to dismiss to consider the full texts of the quoted documents." (citing cases)).

Sheiman held the position of IRS Senior Appraiser beginning on July 10, 2006. Complaint, Attachment 6, ECF No. 1-1 at 26. In 2008, Sheiman transferred from Connecticut to Honolulu, Hawaii. *Id.* In Honolulu, Sheiman was immediately supervised by Ernest Rhoads, and Ron Cerruti was his second level supervisor. *Id.* Both supervisors were located in San Francisco, California. *Id.* Sheiman worked independently, mostly from home or in the field, and was the only appraiser in that office. *Id.* Sheiman consistently received performance ratings of at least "exceeds fully successful" on his performance appraisals. *Id.*

On September 16, 2011, Cerruti received an anonymous letter accusing Sheiman of "golfing in the early afternoons during the work week." Complaint, Attachment 7, ECF No. 1-1 at 26, 59. The Treasury Inspector General for Tax Administration (TIGTA) began an investigation which lasted approximately two and a half years. *Id.* at 59. During the investigation, TIGTA gathered Sheiman's golf records from 2006 to 2014 and conducted surveillance of his activities. *Id.* at 26. On October 24, 2014, the U.S. Department of the Treasury (DOT) sent Sheiman a notice proposing removal (i.e., termination) on two charges. *Id.* Charge one alleged that Sheiman provided false information regarding his time and attendance records and had played golf during duty hours on 168 occasions. *Id.* Charge two alleged that he provided misleading information regarding his time and attendance records and had played golf on a day on which he took sick leave on 29 occassions. *Id*. Sheiman replied to the notice in

writing and stated that "despite the fact that he may have played golf on any particular workday" he had a flexible schedule and always worked an 8-hour workday. *Id.* DOT evaluated the TIGTA report and Sheiman's written response to the charges. *Id.* at 59, 60. DOT concluded that Sheiman should be removed on February 6, 2015. *Id.* at 60. Sheiman elected to retire on February 5, 2015. *Id.*

Sheiman appealed his termination to the Merit Systems Protection Board (MSPB). Complaint, Attachment 6, ECF No. 1-1 at 25. In an Initial Decision dated August 1, 2016, the administrative judge found that the DOT failed to prove the first charge, sustained the second charge, and mitigated Sheiman's removal to a 30-day suspension. *Id.* at 38, 49. Both parties filed petitions for review to the Board itself. Complaint, Attachment 7, ECF No. 1-1 at 58. Sheiman's petition included a request for the return of money DOT had taken through the Treasury Offset Program (TOP) to offset the debt Sheiman incurred for compensation paid to him for time while he was playing golf. *Id.* at 74. The MSPB's May 24, 2022 Final Decision reversed the administrative judge's initial decision, sustained Sheiman's removal, and found that it was without jurisdiction to order cancelation or amendment of the debt. *Id.* at 58, 74. Sheiman appealed the MSPB's decision to the U.S. Court of Appeals for the Federal Circuit, and that appeal remains pending. *Sheiman v. Treasury*, U.S. Court of Appeals, Fed. Cir., Docket No. 22-2045.

On July 8, 2015, the National Finance Center ("NFC")[2] issued a demand notice to Sheiman setting forth an amount due of $24,455.59. The notice stated that "[t]his bill is for 559.40 hours of sick leave overdrawn at the time of your separation on 2/05/15." ECF No. 1-1 at

---

[2] The National Finance Center is a federal agency within the U.S. Department of Agriculture that provides human resources, financial, and administrative services for agencies of the federal government. Wikipedia, National Finance Center (last visited on Sept. 1, 2023).

5; ECF No. 11-2 at 3-7. It also stated that "[t]he Debt Collection Improvement Act of 1996 requires all Federal agencies to refer delinquent administrative non-tax debts over 120 days delinquent to the Department of Treasury, Bureau of the Fiscal Service (BFS) for further enforced collection efforts," and that "[t]he BFS may enforce collection of delinquent debts by … initiating tax refund offsets ... and/or offset of other federal payments ...." ECF No. 11-2 at 6. The notice also explained how Sherman could dispute the bill, which involved "contact[ing his] former agency" to initiate the dispute process. On February 8, 2016, the NFC issued Sheiman a corrected demand notice for payment of $25,769.52 based on its calculation of time and attendance "corrections." ECF No. 11-2 at 3, 10; ECF No. 1-1 at 6, 7. Through the TOP, the BFS collected payments toward this "non-tax federal debt" by applying Sheiman's Social Security Administration retirement payments toward the debt. ECF No. 1-1 at 3; ECF No. 1 at 3 ("The U.S. Department of the Treasury through the Taxpayer Offset Program (TOP) authorized the Bureau of the Fiscal Service to take part of the Plaintiff's Social Security and Federal Retirement monthly payments. These takings are used by the IRS towards payment of a claimed debt owed by the Plaintiff.") Sheiman asked DOT to stop its debt collection "many times." ECF No. 1 at 5.

In June 2022, Sheiman disputed his debt, but BFS informed him that according to the "creditor agency," the NFC, the debt was valid, and continued collection. ECF No. 1 at 3; ECF No. 1-1 at 21, 23. The complaint seeks cessation of the payments to DOT and return of all of the funds taken thus far. *Id.* at 5, 8.

II.     LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. . . . A plaintiff

4

asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In adjudicating a motion to dismiss under Rule 12(b)(1), the court "accept[s] as true the . . . allegations in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016). In addition, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Central Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)(internal citations omitted).

"[P]leadings of a pro se plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)(internal quotation marks omitted).

### III.   DISCUSSION

DOT argues that the United States has not waived sovereign immunity and the complaint should be dismissed because this court does not have subject matter jurisdiction. ECF No. 11-1 at 2. "In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction ...." *Presidential Gardens Associates v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999).

As noted, Sheiman invokes the Court's jurisdiction under 28 U.S.C. § 1346(a)(1). ECF No. 1 at 8 and ECF No. 1-1 at 1. This provision states as follows: "(a) The district courts shall have original jurisdiction, concurrent with the United States Claims Court, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected

without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws." Under this provision, Sheiman's lawsuit must "be an action seeking recovery of one of three things: (1) an internal-revenue tax alleged to have been erroneously or illegally assessed or collected; (2) a penalty claimed to have been collected without authority; or (3) a sum alleged to have been excessive or in any manner wrongfully collected under the tax laws." *Pfizer Inc. v. United States*, 939 F.3d 173, 176 (2d Cir. 2019)(internal quotation marks omitted).

In essence, Sheiman alleges that the government is wrongfully withholding Social Security retirement benefits otherwise payable to him under the Social Security laws to recoup compensation the Government incorrectly alleges was paid to him for sick leave taken while he was golfing. *See* ECF No. 1 at 3; ECF No. 1-1 at 5-6. Sheiman disputes the debt and asserts that the money was improperly taken, ECF No. 1 at 2, 3, but he does not make any factual allegations suggesting that it falls within one of the three categories specified above. And the plain language of the statute makes clear that it does not. His lawsuit seeks "recovery," 28 U.S.C. § 1346(a)(1), of Social Security payments the Government has withheld. Social Security retirement benefits are plainly not either an "internal-revenue tax" or a "penalty." As *Pfizer* puts it, they are not "funds that [Sheiman] has already paid to the IRS" as a "taxpayer." *Pfizer*, 939 F.3d at 178 ("The first two categories listed in §1346(a)(1) – 'internal-revenue tax' and 'penalty' – both address types of *taxpayer* claims that seek to recover funds that *the taxpayer* has already paid to the IRS." (emphasis added)). Finally, they are not a "sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws." 28 U.S.C. § 1346(a)(1). That category, according to *Pfizer*, "is properly construed in harmony with these more specific terms [i.e., "internal-revenue tax" and "penalty"]" to "refer to amounts *the taxpayer* has previously

paid to the government and which *the taxpayer* now seeks to recover." *Pfizer,* 939 F.3d at 178-79 (emphasis added).  Sheiman's Social Security benefits are not amounts he has paid as a taxpayer.

Even if Sheiman could be said, as a former IRS employee, to have "already paid to the government," through Social Security taxes withheld from his pay, the withheld amounts he now seeks to recover, he would have done so in his role as an employee, not as a "taxpayer."  Further, as the defendant notes, *see* ECF No. 11-1 at 7-9, the withheld retirement benefits were not "sums . . . collected under the internal-revenue laws," because the Government withheld the benefits as "administrative offsets" based on its authority under the Debt Collection Improvement Act of 1996 ("DCIA"), and in particular, 31 U.S.C. § 3716, which permits collection by "administrative offset."  *See also* 31 U.S.C. § 3701(a)(1)("'administrative offset' means withholding funds payable by the United States . . . to a person to satisfy a claim."); ECF No. 11-2 at 5-7 (demand notice to Sheiman referring to Government's authority under the DCIA); *id.* at 10-13 (same); ECF No. 1-1 at 3 ("The U.S. Department of Treasury applied all or part of your [Social Security] payment to delinquent debt that you owe.  This action is authorized by federal law.").

In his opposition brief, Sheiman also cites the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1)("FTCA"), to claim subject matter jurisdiction here.  That provision vests district courts with "exclusive jurisdiction of civil litigation claims against the United States for money damages or for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of any U.S. government employee while acting within the scope of his or her employment.  Sheiman points out that his complaint alleges that the calculations done by the TIGTA investigator who investigated his alleged use of sick time to play golf were erroneous.  *See* ECF No. 14 at 2-3; ECF No. 1 at 3.

As the defendant notes, however, exhaustion of administrative remedies is a prerequisite of FTCA jurisdiction.  *See* 28 U.S.C. § 2675(a)(FTCA action "shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . ."); *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (noting that FTCA exhaustion is "jurisdictional and cannot be waived.").  Nowhere in the complaint, the attachments, or the opposition brief is there any suggestion that the Plaintiff has "presented his tort claims to" the IRS "for administrative relief."  *Flynn v. NFS*, 2016 WL 7246070 *3 (D.Conn. Dec. 15, 2016).  Although Sheiman did submit a "Cross Servicing Debtor Dispute Form" to the BFS in June 2022, *see* ECF No. 1-1 at 20-23, that form did not make reference to any "negligent or wrongful acts" by any government employee.  *See* 28 U.S.C. § 1346 (vesting jurisdiction in district courts over claims for damages caused by negligent or wrongful acts of government employee while acting within the scope of employment).  All it said was that the May 24, 2022 MSPB decision "ruled that all charges of playing golf and not working were unsupported and [Sheiman] was [found] not guilty of any misuse of time" and that "[Sheiman] had earned all sick time before using it."  ECF No. 1-1 at 20.  Putting aside that this language mischaracterizes the MSPB's ruling, which did not find that "all charges" were "unsupported" or that Sheiman was "not guilty" of "any misuse of time" and which expressly declined jurisdiction over the debt at issue in this case, it does not describe any negligent or wrongful acts or omissions by any federal employee.  Nor does it adequately describe "an incident" giving rise to any claim for money damages.  *See* 28 C.F.R. § 14.2(a)(administrative claim required under the FTCA must provide "written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property … by reason of the incident").

8

In addition, the dispute form and related documents attached to Sheiman's complaint do not appear to amount to a "final denial" of his claim, as contemplated by the FTCA's exhaustion requirement. 28 U.S.C. § 2675 (FTCA action may not be brought "unless the claimant shall have first presented the claim to the appropriated Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."); *McNeil v. U.S.*, 508 U.S. 106, 113 (1993)("Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."). The response to Sheiman's dispute form attached to his complaint consists of a form letter from the BFS attaching "debt information from the originating agency" and a form stating that the "[creditor agency] disagrees" with the dispute form. The form letter elaborates that "[t]he National Finance Center can stop collection efforts only if instructed by the debtor's former agency," that "[t]he National Finance Center has not received the instruction to discontinue the collection process," and "[p]lease continue collection efforts." ECF No. 1-1 at 21-22. Whatever else this might be, it is not a decision by an agency "finally den[ying]" a claim under the FTCA. 28 U.S.C. § 2675(a). First, it suggests that no agency, let alone the "appropriate agency," 28 U.S.C. § 2675(a), ever reviewed the merits of any tort claim submitted by Sheiman, which defeats the purpose of the FTCA's exhaustion requirement. *See Collins v. U.S.*, 996 F.3d 102, 109 (2d Cir. 2021)(purpose of exhaustion requirement is "to give the agency an exclusive window to consider settlement" of the claim presented to it). Second, it does not, as "final denials" of administrative claims under the FTCA must, "include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification." 28 C.F.R. § 14.9(a).[3]

---

[3] Also, Sheiman's June 2022 dispute form was likely far too late to have timely exhausted his administrative remedies. According to the complete versions of the documents attached to his complaint, his form was submitted

Sheiman also invokes the Administrative Procedure Act, 5 U.S.C. § 702 (the "APA"), as a basis for jurisdiction, but at least part of the relief Sheiman is seeking constitutes money damages and "[t]he APA expressly does not waive sovereign immunity for claims seeking money damages." *Knight v. U.S. Sec. & Exchange Comm'n*, 2009 WL 10701807 *4 (E.D.N.Y. Dec. 16, 2009); *see* ECF No. 1 at 8 (Sheiman's complaint seeking "the immediate cessation of any further payments to the United States Treasury Department, Bureau of Fiscal Service, through the TOP *and the return of all funds (approximately $23,000 plus interest) that have been taken from the Plaintiff's social security and retirement accounts*." (emphasis added)).  Further, as the defendant notes in its reply brief, the APA, too, requires exhaustion in this context, because the rules governing the debt collection procedures being challenged by Sheiman do.  *See* 5 U.S.C. § 704 (no final agency action where agency requires exhaustion by rule and provides that the action "meanwhile is inoperative"); *In re S.E.C. ex rel Glotzer*, 374 F.3d 184, 189 (2d Cir. 2004)(stating that Section 704 "requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule" (internal quotation marks omitted)); ECF No. 11-2 at 6 (July 8, 2015 notice giving Sheiman opportunity to challenge debt under the DCIA); 31 U.S.C. § 3716(a)(providing for notice, other procedural rights, and "an opportunity for a review within the agency of the decision of the agency related to the claim"); *U.S. v. Beulke*, 892 F. Supp.2d 1176, 1187 (D.S.D. 2012)(describing mandatory exhaustion requirements of the Treasury Offset Program under § 3716).  As previously discussed, neither plaintiff's complaint nor the

---

almost seven years after the date by which he was instructed to submit any disputes about the debt, *see* ECF No. 11-2 at 6 (July 8, 2015 notice: "If you think there is a problem or error with your bill, contact your former agency in writing or by telephone … no later than 30 days from the date of this bill …."), and almost five years after his claim likely accrued.  *See* 28 U.S.C. § 2401(b)("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing … of notice of final denial of the claim by the agency to which it was presented.").  Nonetheless, the Supreme Court has held that those time limits are not jurisdictional and are subject to equitable tolling, *United States v. Wong*, 575 U.S. 402 (2015), and so this would not be a basis to dismiss the complaint under Fed. R. Civ. P. 12(b)(1).

10

documents attached to his complaint suggest that he has fully exhausted his administrative remedies.

Finally, Sheiman states that "[i]f [he] is misunderstanding the Federal District Court's authority," I should transfer the case to the U.S. Court of Claims. As the Government has pointed out, however, it is questionable whether the Court of Claims would have jurisdiction over this case, which involves the enforcement of a debt under the DCIA. *See McNeil v. U.S.*, 78 Fed. Cl. 211, 228 (2007)("Sections 3701, 3702, 3711, and 3716 are not money-mandating sources of jurisdiction in this court."); *U.S. v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)(in case involving jurisdiction of Court of claims, stating that "a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it can be fairly interpreted as mandating compensation by the Federal Government for the damage sustained." (internal quotation marks omitted)). So it appears unlikely that transferring this case to the Court of Claims would help Sheiman.

## IV.  CONCLUSION

For these reasons, I do not have subject matter jurisdiction over this case based on the record before me, and I decline to transfer the case to the Court of Claims. This does not necessarily mean, however, that Sheiman may not ultimately have a claim falling within this Court's jurisdiction and asserting that some or all of the debt the Government is collecting through the withholding of Social Security payments is invalid. It simply means that this Court does not have authority to decide that issue based on the present record. If Sheiman believes that he has, in fact, exhausted his remedies, that a federal employee was negligent in a way that caused him harm, and that there is some reason to believe that the statute of limitations was equitably tolled or otherwise should not apply, he may file an amended complaint within 30 days

11

of this ruling setting forth facts addressing those issues and pleading a claim under the FTCA. In addition, if he has in fact exhausted, he may also be able to seek relief against the continued withholding of Social Security payments under the APA. (To be clear, I make no finding as to the adequacy of any such future pleadings in this ruling.) If, on the other hand, he has not, in fact, exhausted his remedies, he may seek to do so, under the FTCA or the DCIA or both, and then, potentially, return to this Court to assert a claim within this Court's jurisdiction.

So the complaint is dismissed without prejudice. If Sheiman makes no further filing within thirty days of this ruling, the court will close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
September 7, 2023